IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES CONSTANTINE GEKAS, MD, FAAC, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 3:17-cv-00009 Judge Crenshaw/Frensley |
| HCA HEALTH SERVICES OF ) TENNESSEE, INC., d/b/a TRISTAR ) CENTENNIAL MEDICAL CENTER, et al., ) ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Docket No. 18. Defendants have also filed a Supporting Memorandum of Law. Docket No. 19. The pro se Plaintiff, Dr. Gekas, filed a Motion for Leave to File Manually (Docket No. 20), which was granted (Docket No. 21). Subsequently, Dr. Gekas filed his Response in Opposition as a large amount of materials enclosed in a binder, with additional spiral-bound materials; these materials are not part of the electronic record and have no docket number, but will be referred to as "Response." Defendants have filed a Reply. Docket No. 23. Dr. Gekas filed a "Motion to Amend" (Docket No. 24) that the Court has construed as a Sur-Reply (*see* Docket No. 26).

### A. Motions to Dismiss Under Fed. R. Civ. P.

The United States Court of Appeals for the Sixth Circuit has described the standard of review on a motion to dismiss as follows:

> Under *Rule 8(a)(2) of the Federal Rules of Civil Procedure*, a
> complaint must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. Rather, to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *id.*, and to "state a claim to relief that is plausible on its face," *id. at 570*, see also *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 129 F. Ct. at 1949*. And although we must accept all well-pleaded factual allegations in the complaint as true, we need not "accept as true a legal conclusion couched as a factual allegation." *Twombly, 550 U.S. at 555* (quoting *Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986))*; see also *Iqbal, 556 U.S. at 678*.

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009); *accord Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## B. Factual Allegations

Dr. Gekas's Complaint is a 55-page document that ranges freely over various situations that occurred over the course of his professional association with Defendant HCA Health Services of Tennessee, d/b/a/ Tristar Centennial Medical Center ("CMC"). *See* Docket No. 1. Dr. Gekas alleges that he was harmed by assorted acts of one or more of the Defendants relating to his work at CMC, and that misconduct on the part of some of the Defendants (and other individuals) led to the non-renewal of his staff privileges at CMC. A bevy of claims for relief are asserted, including violation of the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. § 11101, et seq.; violations of the United States Constitution, specifically Amendments 14, 13, 5, 4, and "Amendment II regarding free speech;" "numerous tort acts;"

2

breach of contract; "multiple violations of the Model Codes of Legal Responsibility" by various attorneys; and "violations of Ex Parte Standards" by "hospital attorney Kelly Duggan, Esq." *Id.*

The following allegations are taken from the Complaint, and are accepted as true for the purposes of evaluating Defendants' Motion to Dismiss. Dr. Gekas is a physician who enjoyed staff privileges at CMC until February 8, 2012, when CMC's Medical Executive Committee ("MEC") made the decision not to renew his privileges for an additional two-year term, and to place him on precautionary summary suspension ("PSS"). *Id.* at 5, 9. Prior to this time, Dr. Gekas had been working at CMC for over 14 years with 23 departments, had engaged in approximately 42,000 interactions with others, and only 7 "circumstances of alleged verbal impropriety occurred." *Id.* at 7. The allegations against Dr. Gekas included sexual harassment of nurses, intoxication while on duty, disruptive behavior toward a physician colleague, improper disgowning of a patient, and verbal rudeness to a physical therapist. *Id.* at 7-8. Despite these allegations, prior to February 2012, "NOT ONCE DID THE BOARD OF DIRECTORS FIND [Dr. Gekas's] PATIIENT CARE OR BEHAVIOR TO BE IN VIOLATION OF THE CONTRACT. THEY RENEWED THIS CONTRACT WITHOUT ALTERATION FOR . . . 14 YEARS." *Id.* at 9 (emphasis in original).

In February 2012, Dr. David Reyes, the Chief of Medicine, met with at least one other physician and a recording secretary to discuss Dr. Gekas's application to renew his staff privileges. *Id.* at 9. Based on information related to the allegations that had been made against Dr. Gekas over the years, including the most recent allegation of sexual harassment of a nurse in late 2011, CMC decided not to renew Dr. Gekas's privileges. *Id.* Dr. Gekas has an explanation for each of the seven allegations against him, and six of the seven have been resolved. *Id.* at 21. Specifically:

3

> Throughout this circumstance Dr. Reyes and Dr. Wilters have tried to get away with the mental act of nothing ever gets resolved. That concept is so absurd that it barely needs explanation, but here goes. For complaint number 1, I have a written document that states no further action is necessary. For complaint number 2, I have a document that says that the Vanderbilt evaluation was accepted and it was over. Complaint 3, involving intoxication was immediately dismissed then by the administrator and then no mention of this was in the follow-up document. Complaint 4, about my statement to Dr. Jamison was resolved by document requirement of attending an anger management course. Complaint 5 of improper disgowning was resolved by a document stating no such action occurred. Complaint 6 about being rude to a physical therapist was resolved by a human resources report that this was dismissed as not creditable. Complaint 7 was actually uninvestigated and was never brought to a conclusion. Therefore 6 complaints all have documents of completion and resolution.

*Id.*

After the decision was made not to renew his privileges, Dr. Gekas requested and received a hearing on the matter, as provided for by CMC's by-laws. *Id.* at 29-32. During this hearing, Dr. Gekas was represented by counsel and testified on his own behalf. *Id.* The hearing included the testimony of at least seven witnesses on behalf of CMC, and three "character witnesses" who were called by Dr. Gekas. *Id.* at 28, 31. Some of the participants in the hearing either knew each other from other settings or had had past negative encounters with Dr. Gekas. For example:

> Three attempts at jury (hearing panel) tampering occurred by Gideon, et al. Firstly, they were aware of Dr. John Forrest who was appointed as a member that he had written a nasty letter about [Dr. Gekas] and was also a partner of one of the complaining witnesses. He was replaced with a Dr. Polk who had been a partner of a Dr. Cooper for at least 15 years and Dr. Cooper's wife is a member of the Gideon, et al[.] law firm. He was replaced, but the importance so far is that this conflict of interest and unfairness was contributed to Gideon, et al. The third replacement was a Dr. David L. Deyer, after the hearing we became aware of information that implied in fact Dr. Deyer had been a previous client of C.J.

4

> Gideon. Certainly if that were true, Mr. Gideon and Dr. Deyer
> would have known of it. No disclosure of this relationship ever
> occurred, and had I not known of the bias of the first two doctors
> appointed, my lawyer would have had no input of their bias (yet
> Mr. Gideon and Dr. Wilters were well aware of this.) Finally, we
> later found out that Dr. Burton Sanders, the chairman of this panel
> was then an employee of the hospital, the agent who was
> prosecuting me. No disclosure of that was ever brought forth.

*Id.* at 31.

Following the hearing, Kelly Duggan, described by Dr. Gekas as "the chief attorney for the hospital," "stated that she was going to have a private meeting with the panel members to explain things." *Id.* at 32. Later, the hearing panel issued a report upholding the decision not to renew Dr. Gekas's privileges. *Id.* at 30-35. The report stated that Dr. Gekas had been counseled "multiple times for offensive behavior, which had persisted over many years." *Id.* at 33. It further stated that Dr. Gekas "was terminated from the medical staff in 2006 for offensive and disruptive behavior" and "was involved in a number of incidences of angry outbursts." *Id.* The report also stated that Dr. Gekas had been warned on more than one occasion that further infractions would result in serious discipline, and that the committee doubted that Dr. Gekas could be fully rehabilitated. *Id.* Dr. Gekas vigorously disputes all of the conclusions contained in the report. *Id.* at 32-34.

### C. Dr. Gekas's Claims

### 1. Violation of the Health Quality Improvement Act and the Tennessee Peer Review Law

Dr. Gekas contends that CMC (and possibly some or all of the named physician defendants) have violated the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11101, et seq. Docket No. 1, p. 2, 25-28. Dr. Gekas asserts that the "four prongs" of HCQIA were not met in his case and "therefore [the Defendants] have fortified their immunity from

5

prosecution for monetary damages." *Id.* at 27.  Defendants argue that the Complaint fails to state a claim under HCQIA because HCQIA does not create a private cause of action for physicians. Docket No. 19, p. 5-6.  Dr. Gekas responds:

> HCQIA is not recognized as a private cause of action.  Rebuttal to peer review actions is a federal right, as multiple previous primarily peer review actions have been heard in the federal courts, and which 42, USC-1983 [*sic*] and which 18 USCS-241 (the consideration of conspiracies) 18 USCS-242).  ALL OF THE ABOVE WITH THEIR SPECIFICS AND INTERACTIONS CREATE THE FACIAL AND FACTUAL PLAUSABILITY OF A JURISDICTION OF FEDERAL COURTS.
>
> . . .
>
> Statements that HCQIA was intended for factual determination in a peer review and therefore does not create a cause of action is simply absurd.  As the consequences of peer review have devastating effects both locally and nationally on the individual rights.

Response, p. 12-13.

In their Reply, Defendants argue that they have not raised the issue of immunity under HCQIA, but rather assert that they need not raise such a defense, because HCQIA does not create a private cause of action such that Dr. Gekas has a feasible claim.  Docket No. 23, p. 1-3.  Dr. Gekas responds that he discussed immunity under the HCQIA "in case the defendants would try to invoke immunity they would be so inhibited," and asserts that "[a]s my comments reflect I find HCQIA as an official statute that allows wrongful action to be defended."  Docket No. 24, p. 4.

HCQIA was enacted to improve healthcare for the benefit of patients, and to that end, it includes provisions allowing for comprehensive and unimpeded peer review of physicians in which the peer reviewers are immune from legal liability.  42 U.S.C. § 1101 (4), (5); 42 U.S.C. §

6

11111(a)(1). HCQIA does not create a private cause of action for physicians who are unsatisfied by the peer review process. *See Logan v. HCA, Inc., et al.*, No. 3:05-00006, 2005 WL 3240624 (M.D. Tenn. Nov. 30, 2005); *Carter v. Bluecross Blueshield of Tenn., Inc.*, No. 1:05-cv-304, 2006 LEXIS 24899 (E.D. Tenn. April 24, 2006). Dr. Gekas has not cited any authority to the contrary, and his conviction that such a private cause should exist is insufficient to create one. Thus, Dr. Gekas's claim for violation of HCQIA should be DISMISSED.

**2. Violations of the U.S. Constitution**

Dr. Gekas alleges that some or all of the Defendants have violated his rights under the United States Constitution; specifically, "constitutional amendments, number 14, 13, 5, and 4," as well as "Amendment II regarding free speech." Docket No. 1, p. 4, 45. Defendants argue that they cannot be liable for Constitutional violations because they are not state actors, and that, in any event, such potential claims would be time-barred. Docket No. 19, p. 7-11.

In order to be entitled to relief for an alleged violation of Constitutional rights, a plaintiff must establish: "(1) the deprivation of a right secured by the Constitution . . . of the United States and (2) that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest United States Ins. Co.*, No. 3:14-cv-0654, 2016 U.S. Dist. LEXIS 118968 at *7 (M.D. Tenn. Sept. 2, 2016) (discussion of state actor in context of claim under 42 U.S.C. § 1983), *quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977 (1999) (further citation omitted). "A private entity . . . can be held to constitutional standards 'when its actions so approximate state action that they may be fairly attributable to the state.'" *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007), *quoting Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). To determine whether actions are "fairly attributable to the state," the Sixth Circuit has applied three

7

tests: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Id.* A plaintiff need only satisfy one of the tests to proceed with his claim. *Id.* The tests are understood as follows:

> The public function test requires that "the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain."
> 
> . . .
> 
> The state compulsion test requires that the state "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state."
> 
> . . .
> 
> Under the symbiotic relationship test, the action of a private party constitutes state action where "there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself."

*Id.* at 519-20, *quoting Wolotsky*, 960 F.2d at 1331, 1335.

The Complaint does not contain any allegations that would apply to the first two tests (public function or state compulsion). *See* Docket No. 1. Rather, Dr. Gekas relies on allegations that would trigger the nexus or entwinement tests: "Under the doctrine of inextricable entanglement, CMC is so intertwined with the government and its rules, regulations, and carrying out the governments [*sic*] responsibilities that it is acting as a state actor under the color of law." *Id.* at 45 (altered from ALL CAPS in the original). In his Response, Dr. Gekas adds that CMC is a state actor because it "carries out the express wishes of the federal government," including participation in the Medicare and Medicaid programs, an argument that appears to implicate the public function test. Response, p. 9-10. Further, Dr. Gekas explains that he is

"requesting a NOVEL AND NEW READING of the concept of state actor being FUNCTIONAL RATHER THAN DESCRIPTIVE." *Id.* at 10 (emphasis in original).

To the extent that Dr. Gekas intends to argue that CMC's participation in the Medicare and Medicaid programs is a public function, he has provided no authority to support such a proposition. Regarding the provision of healthcare services, the Sixth Circuit has held that this is not a power which traditionally has been exclusively reserved to the state. *Wolotsky*, 960 F.2d at 1335.

Regarding Dr. Gekas's argument that "CMC is so intertwined with the government . . ." that it is a state actor, the Sixth Circuit has held that private healthcare providers and facilities are not converted into state actors by virtue of being subject to government regulation, receiving government funding, or contracting with a government-run entity. *See, e.g. Wolotosky*, 960 F.2d at 1335-36. "Merely because a business is subject to state regulation does not by itself convert its action into state action . . . Rather, it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state . . . ." *Id.* at 1335. Dr. Gekas does not allege that the government was intimately involved in CMC's failure to renew his staff privileges. He has not alleged, for instance, that the government played a role in the personnel decisions made by CMC that affected his privileges, or in the process CMC used in order to evaluate his status, or that any of the individuals involved in that process or decision were state employees or officials. *See* Docket No. 1. Because Dr. Gekas has not shown that CMC's actions with regard to him can be fairly characterized as state actions, to CMC cannot be liable for the Constitutional violations that Dr. Gekas has alleged, even assuming, as we must, that such allegations are factually true. Dr. Gekas's request for "a novel

and new reading of the concept of state actor" should be declined, and his Constitutional claims should be DISMISSED. [1]

**3. Remaining State Law Claims**

Dr. Gekas alleges multiple other claims that appear to fall under the purview of state, rather than federal law: "numerous tort acts," violation of the "Tennessee Peer Review Law," breach of contract (related to the implementation of CMC's by-laws, including the process through which his hearing was conducted), violations of "the Model Codes of Legal Responsibility," and "violations of ex parte standards." *See* Docket No. 1. The Court may decline to exercise supplemental jurisdiction over state law claims if it dismisses "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (2006). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010), *quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614 (1988). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." *Id.* at 952, *quoting Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 154-55 (6th Cir. 1996). "Factors that weigh in favor of retaining supplemental jurisdiction include: (1) if the plaintiff engages in forum shopping; (2) if the parties had completed discovery; or (3) if there are ripe motions for summary judgment." *O'Connor v. Cunningham*, No. 3:13-cv-00229, 2016 U.S. Dist. LEXIS 83691 at *12 (M.D. Tenn. June 28, 2016).

---

[1] Because Dr. Gekas's Constitutional claims are subject to dismissal on the grounds that CMC is not a state actor, the Court need not address the Parties' arguments regarding whether the applicable statutes of limitation have run.

Here, the case has only been pending for one year; the parties likely have not even engaged in, let alone completed, discovery. There are no pending motions for summary judgment and the case is not set for trial. Further, there is no evidence that Dr. Gekas is engaging in forum shopping. Thus, the relevant factors weigh in favor of the Court declining to exercise supplemental jurisdiction over the Complaint's remaining state law claims, and those claims should therefore be DISMISSED.

### D. Recommendation

For the foregoing reasons, the undersigned recommends that Defendants' "Motion to Dismiss" (Docket No. 18) be GRANTED and that the claims against Defendants be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge